Good morning, Your Honors. Here, the District Court far exceeded this Court's X plus Y equals Z test for determining whether the public disclosure bar applies as set forth in Metesky and other precedent in two ways. First, the X or the true state of facts, CALCON's ineligibility to participate in the Paycheck Protection Program, was not and in fact could not have been disclosed by the NAICS code. Second, that code did not and could not have put the government on notice to investigate the true state of affairs, which in any event is not the correct standard under the FCA. These errors create a statutorily unanticipated Catch-22 where the NAICS code both disclosed and did not disclose CALCON's ineligibility. Can we dig in on that code because I think that seems to be the crux of an issue here. So the argument is that the code is for lending companies that use real estate and the exception is for mortgage service company that disburses loans and sells them within 14 days. Aren't those two inconsistent? I mean, is it possible to both be a business that backs up the loans with real estate and then recycle them within 14 days? Your Honor, what the actual NAICS code reveals is not whether or not CALCON is eligible or ineligible. And this mismatch you're talking about here stems from the SBA's prohibition on lending companies, banks and lenders, participating in Section 7A loans, of which the PPP program was, and the NAICS code 522292, which as you noted applies broadly to companies that use real estate as collateral. And the exceptions that you noted for flipping within 14 calendar days of closing or for mortgage servicing companies that primarily engage in the business of servicing loans creates an ambiguity within the NAICS code disclosure itself. But what I'm saying is how can a company both be a lending company that uses real estate as collateral and also disburse loans and sell them within 14 calendar days? Because the NAICS code applies generally to companies that use real estate as collateral, but that also includes companies that do that and flip them within 14 days or service such loans on behalf of other companies. And so what the NAICS code does not do is reveal categorically that CALCON is ineligible. But combined with the other information on the disclosures to the government, that is how we make that determination and resolve that ambiguity. So are you saying that you could use that code and be a lending company that uses real estate as collateral and also handle loans that are recycled within 14 days? Yes, Your Honor. The code actually encompasses both of those. And so what did you contribute in the complaint beyond, I guess, let me say it this way, what are the facts that you added beyond just the NAICS code that establishes the falsity? So the facts that were added by Relator here was information found outside of the confines of the PPP loan database, which was the only public disclosure relied upon by the District Court and we would submit as the only public disclosure that would trigger the bar. Relator found information that CALCON issues jumbo and other nonstandard types of loans, including fix and flip loans, bank statement loans, construction loans, that it claims to be a direct lender that holds a portfolio of loans and acquires loans from other lenders. Each of these facts would tend to rebut the express certifications of eligibility that CALCON made here and eliminate any impressions that they fall into any of the exceptions. And are those facts that you also got from public sources? Well, Your Honor, depending on how you wanted to find the term public sources, I think you could say that these do fall under what we found from public sources. However, not everything that comes from what's called public sources would trigger the public disclosure bar. Do we know what the sources were at this point or would that be something we need to remand to determine if we agree with you about the code? Your Honor, we haven't gotten into discovery or exchanges. This was decided on a motion to dismiss, but of course Relator had to submit a packet of information to the government prior to filing its complaint and it would be information that would have been contained in there. So it's not before the court at this moment. Is that before the district court though? Is that something that can be looked at at the motion to dismiss stage? Your Honor, it wasn't looked at in terms of what Relator actually uncovered for the reasons I just stated. Defendants have gone and done internet sleuthing and identified a number of pieces of information that they believe triggers the public disclosure bar. I would like to explain why they certainly do not and why they don't reveal CALCONS ineligibility, which is the central issue in this case. But the district court hasn't gotten to that point yet? Correct. The district court dismissed solely on the basis of the NAICS code. And if I might button up that point, Your Honor, the NAICS code was not only ambiguous, but here you had a scheme, the actual PPP program that was set up expressly on the basis where lenders, who are the entities who are processing the applications on behalf of the government and whose loans were guaranteed and later forgiven, were expressly entitled to rely on borrower certifications for eligibility. Now that conclusively eliminates any chance that the NAICS code could have revealed that they were ineligible because for the reasons Your Honor stated, there is a sort of narrow window where someone falling under this NAICS code could have been eligible for the PPP. It is the additional information that Relator was able to uncover that enabled the Relator to make the conclusion that a fraud, in fact, had occurred here. Why isn't there a scienter problem with this allegation given that it's kind of confusing? It's like an exception to an exception and the district court was confused about what it meant, it seems, maybe, according to your argument. So why should we assume that the company knew it was lying, even if you're right? I don't think it's necessarily an assumption, Your Honor, but what we have here is the PPP, it required an express certification by an authorized representative under penalty of civil and criminal penalty that they understood the rules. Now that combined with the idea that whoever signed this on behalf of the company, an authorized person, would have likely had knowledge about the company's own business. So those two things could create, potentially, I see where you're saying there could be some confusion there, but I think that's going to be a fact-intensive inquiry where the party was on notice of a responsibility to affirmatively understand eligibility rules before making this application. But you, I mean, it's not, I mean, normally we would say, well, you know, that's just a matter to be worked out at the discovery stage, but under Rule 9b, you have to plead fraud with particularity. You really think that, just while you had a general obligation to certify your statements, it's enough to get you the particularity of, with respect to Sienter? Well, Your Honor, under Rule 9b, Sienter may be alleged generally, and under the FCA, Sienter includes any of actual knowledge, deliberate ignorance, or reckless disregard. I would submit that in combination with that certification, there is at least a duty to do more than just assume that your industry did or did not fall into these exceptions, especially when we've alleged that Mr. Erskine, the founder, owner, and CEO of the company, is likely the person that would have signed the form or authorized someone to do so on the company's behalf. And my final point on that is defendants seem to argue that we need to plead specific contextual facts, a clear description of circumstances, but I would submit, Your Honors, that that is not the standard for Sienter to be alleged here, and I would like to reserve the remainder of my time. Good morning, and may it please the Court. Terence Gergen for CALCOM and Mr. Erskine. In briefing, we always start with the basic Twombly-Iqbal pleading standards, but rarely do those most basic formulations of those standards apply so conclusively and definitively to a complaint. We discussed the public disclosure bar, but the question is going to be whether or not the public disclosure bar applies to the facts asserted here, so I think starting with what actual facts were asserted by Relator is a useful exercise. Contrary to what they claim in briefing, Relator does not assert that CALCOM employed fewer than 432 employees. In contrast, it speculates based on square footage analysis. Let's assume you win that issue and talk about the other ones. Similarly, it does not allege that CALCOM misspent its loans. It simply posits that because it didn't have the employees based on square footage analysis, it could not have spent the loans properly. I thought it used announcements about how successful the company was to create that issue. Well, I think that was a separate issue about the good faith certification that the loan was necessary. That is another issue on which Relator speculates. They say, quote, it is very unlikely defendants suffered any economic downturn, but they don't address the fundamental issue that necessity certification is made at the time, in April 2020. At that moment, does a borrower believe in the certification itself? Is that current economic uncertainty makes this loan request necessary to support the ongoing operations of the applicant? That's nothing to do with what happens during the pandemic a year, two years later. There's no after the fact analysis of whether or not they, in fact, did suffer. It is whether or not at that point in time, they had a good faith basis to believe that economic uncertainty existed. That is what the necessity certification was. And there are, again, no facts whatsoever in the complaint concerning the state of mind at that time that would go to that issue. The only facts alleged in the complaint that we can call facts are three, one, that Calcon received a PPP loan. That was gleaned by Relator from pandemicoversight.org. Number two, that Calcon disclosed it is a lending company that uses real estate as collateral. Now, Relator goes on to, this is a quote from paragraph 21 of the amended complaint. Defendants admit that its business function included lending functions reporting its industry type with NAICS code 522292, which is for lending companies that use real estate as  According to the amended complaint, the only basis for Relator to claim that Calcon was ineligible for this loan was the application, was analysis of the NAICS. That's not quite true, though, because the next sentence acknowledges that there are exceptions to the code and some of those exceptions might have made them eligible. But then they allege Calcon did not fit within this limited category, but also but held loans in portfolio. And I beg your pardon, in addressing what are not well pled facts, I should have touched on that point as well, because what they essentially put out there is a non sequitur saying that a business that issues jumbo loans cannot qualify for these exceptions. There's no explanation of why that is. What what is the relation of jumbo loans or any other loan type to that exception? It's just a theory that jumbo loans must necessarily remove them from the exception, but there's no facts that they actually do not apply, that the exception does not apply. If they if they had pleaded that, I mean, that's that I take it as an Iqbal plausibility objection, not a public disclosure objection. Yes. Yes. Right. That's why I corrected myself. I should have included that analysis of that purported fact. And it seems to be a mistake of the general rule of thumb that jumbo loans cannot be cannot be closed within 30 days. That's nothing to do with actual existing mortgages being repackaged and sold. So I don't know where they get. I guess I thought the difference. Correct me if I'm misunderstanding this, but I thought the difference was that if they were issuing those loans, which I thought was the allegation, but tell me if I'm wrong, that's different than just servicing someone else's loan because you're issuing it. Is that not right? I think the allegations that loans that we issued, they say because they are jumbo loans, we cannot then sell them to investors within 14 days. They don't they don't draw a connection between jumbo loans and why they can't be packaged. That's the issue there. It's as if saying there can't be a contract because auto parts are at issue. Why? What is the relation? This is a new argument that they haven't had a chance to respond to. Am I right? Well, this is this is just addressing the plausibility of their factual allegations, which we've which we did in our papers. But I'm and I'm addressing it here just for purposes of boiling this down to what is actually at issue with the public disclosure bar, what actually well-pled facts were at issue. And even if we want to assume that there were facts that implicated the 14 day exception, then that still doesn't save their complaint on the public disclosure bar based on what is required for the bar to apply. Now and maybe you're about to say this, but why is that? Because the public disclosure bar does not require it requires only the the underlying transaction and facts of it to be disclosed. And then the question is, what were what is the fraud alleged here? The fraud is that Calcon was a lending company that was excluded from PPP. And that fact is based on the NAICS code, according to their own allegations. And they received a PPP loan despite that. It does not require under Ninth Circuit law that that public disclosure include an express disclosure of fraud. That's not required. It does not require that every allegation or every fact of the fraud be disclosed. And in this case, it's not I mean, it's not a fraud unless there's something that's false. Right. And so you have the statement that you made that was publicly disclosed. But if showing that it's false requires, you know, combining, you know, the NAICS code, which I guess is public, and some other pieces of information from different sources. Why is that? Why does that fall within the public disclosure bar? If they if they have to go out and find different bits of information. And I apologize for not having a citation, but there there is a law in this circuit that the public disclosure bar does not mean one source. It can be compiled from various public sources. So it's your view. So I mean, just to abstract from the facts here, if you have if you look at the PPP database and then you say there's a geological survey report that exists only in print form in a dozen depository libraries, and you look at that and then you combine it with a statement in an alternative weekly newspaper published in Vilnius. And those things together show that the statement was false. You think that's that's out because it's assuming those three sources, we will we will accept that they are public sources for the purpose of this discussion. Yes, that is out. That is publicly disclosed. The essential elements of the fraud have been publicly disclosed. I think the I think there is ample law to that point. And this this I'm sorry to go off on a tangent. But what if some of the what if instead of it being something issued by the geologic survey or some government entity, that piece is in someone's diary, but it's available in a library? If it's an essential element of the fraud, then and it's not publicly disclosed in the bar would not apply. And so how have you shown that all of the things they're talking about have count as the news sources that they need to be for you to win this? Well, we first off, by determining what facts we actually have to determine if they were publicly disclosed. So we've already addressed the the employee issue that we don't need to address that. We've addressed the the their claims that we received financing. We put in our motion to dismiss and we attach the press releases that the that those finance that our financing was revealed on. So that information comes from press releases issued by. And the financing is what you think shows that you fit into the exception? No, no. I'm just discussing facts that they rely on the what what we don't get into. We don't have to defend application of the exception at this point. We just have to determine which we would tell the line. But that's not the question is just what other sources do they derive their alleged facts from? But don't you need to show that those alleged facts, the ones that put together their theory that there was a falsehood? Doesn't that need to have public all the way down? Well, and we and we did my motion. That was my that was my point there. Their claim that we issue jumbo loans again with that's so it's not the plausibility issue of why that if that indicates fraud anyway, assume for a second that it does. That was also issue. And that was in our motion to dismiss as well. Press releases that we issued to describe our business. It was gleaned from our own company website itself, a public source. But you'd have to convince us that a public that a website just by being public counts as a press document, right? Well, I mean, I would say a press release counts as a press document and that counts as media, news media. And I believe that would be a new holding, though, right? Has anyone said that before? We have. We have. There are there is case law. I mean, if not in this circuit, then there is certainly district court cases in this circuit that hold that even more attenuated public disclosures fall within the public disclosure bar. I think this is less attenuated than those we are not saying. And we don't really need to address the outer parameters of what constitutes news media because we think that a company's website plainly constitutes. And why is that? Because news to define news media would be a source that is publicly available, that disseminates information of public note to the public is how I would kind of generally it is not a defined statutory term. It is not defined in the case law. But as the cases discuss, what does news mean? Why would it say news media then instead of just saying public? Well, because there are limits. What would be the limit at that point? Because I would think the little bakery down the corner's website is probably not news media when they have their menu out there and depends on what the it depends on what information of disseminate, I suppose. But a one example of a case will be a doctor's website that reveals the appointment schedule. That's not that's not information of public note. That is information for basically private use. But a press release that is literally but I think you need a website. I don't think you can get all the way there with your press releases, can you? I think we can get there with the with the company's website, though. There's never been a case in any circuit, let alone here, that said a company's public website does not constitute a public disclosure. There have been none that would back up that if that. But the term you need it to be is a news, a news, news media, news media, news media. Yes. So, again, what would we consider news? What would we consider media? A media would be a source of information. News would be information disseminated to the public for public consumption. So if I look up the bakery website to find the menu and their ingredients, that's news media. A company's a company's public website, I would believe, would be news media. But again, I don't think that question needs to be answered here. I don't think we need to get to the definition of news media here based on the district court's opinion that the essential elements of the fraud, that we were a lending company that applied for and received a PPP loan. That's really all that was needed. We don't need to get into the nature of our loans and our press releases based on the district court's opinion. Can I ask you just to go back to the point we started with about the fact that it's jumbo loans isn't enough to show that they're actually holding the loans. If we think that you're right about that, why shouldn't they get a chance to amend the  Well, this gets to sort of the nature of this relator, in my belief, Your Honor. There's no reason to think that this relator has any additional information that could bolster these allegations outside of what it may glean from Google based on its history. This is not an insider. It's not even an existing company. It's a shell company that is run by the attorneys that founded it. They've already had a chance to bolster their complaint. This was the first amended complaint that was dismissed after. Let me ask you about that. They filed an amended complaint after there was a motion to dismiss. The court seemed to indicate that because they amended their complaint once, any further leave to amend would be futile. The court cited the Zucco Partners case for support for that proposition. But in that case, there was an order on a motion to dismiss. And I could see a situation where you get an order from the judge on a motion to dismiss. You don't correct what the deficiencies that the judge points out. It would seem at that point, maybe it makes sense that you don't allow a leave to amend again because they had an opportunity. But is there any precedent for the fact that somebody should take a motion to dismiss and unless they respond to everything argued in that motion, they've missed the opportunity? No, I don't think there's any categorical rules that apply to when and how many complaints you have filed or anything like that. No, I don't think that's how it works. I think it's just really an examination of the facts that they've asserted twice, the two times, and whether or not it is reasonable to conclude that they can possess any other information that would make their claims any more plausible. It seems like your theory that they can't amend, though, depends on accepting your definition of news media. No, I don't believe, well, I. It depends. You want it to be because they're not an insider. They have to use public information and all public information is news media. I do not believe that all public information is news media. I do believe that some sources are more credibly considered news media. I think a company's website is if they can glean information from other sources. I don't know what that would be. I can't speculate, except to wonder if they could, why didn't they on their first attempt? We have no reason to think they have any kind of independent knowledge whatsoever, none, because it's not a, there are no people behind the company to possess independent knowledge. So if they had the ability to glean from Google any further, develop any further information that could bolster their claims, presumably they would have done that already. And there is the issue of the myriad grounds for dismissing the suit that weren't addressed by the district court, but that this court can consider if they're apparent from the record, such as the absolute, complete failure to allege Sienter. The allegations as to Sienter are Mr. Erskine was a cunning businessman. They knew they lied because they must have known they lied. That is the sum total of their Sienter allegations, and that's plainly insufficient under Tuomaly-Nickball. There is the lack of any false statements, as we discussed earlier. There's no falsity as to employee headcount. I think we've taken you away of your time, and it looks like we don't have more questions unless anyone does. No. Okay. Thank you. Let's put four minutes on the clock, because we took ... I appreciate the extra time, Your Honors. I would like to begin by addressing the comments on the news media prong of the public disclosure bar. I heard a lot of talk about public sources and public this and public that, but that, of course, is not the standard. In fact, defendants did not grapple with the textual analysis of what news media means or engage with that standard properly. The Integra 1 court, which we cited extensively throughout our briefs, did just that textual analysis, and the very cases cited by defendants were called out by that court for failing to perform that analysis and having the same conclusion that anything that's on the internet is apparently news media. That's simply not the case under the Integra court's five-factor test or just looking at it in terms of what is the ordinary meaning of the term. What about a press release, though? A press release does not qualify as news media. As the Integra court noted, there's an element of curating that typically comes with the ordinary definition of news media. And in fact, we heard counsel say that there are no cases finding that a website of a company was not found to be news media. And in fact, I believe that's exactly what happened in the case Valley Health that wasn't cited in the briefs but was overseen by Your Honor. And I'll try to find that citation. I have it in my notes here. But there's a Valley Health case where looking at Integra 1 and applying those factors, Your Honor, actually isn't what is traditionally considered news media. A website and a press release are different, though. Press release seems a lot closer to news media to me than just a company's website with information on it. The Integra 1 court did grapple with these sort of nuances under the five-factor test. And the difference would be a curating element that someone independently says, this is something that is newsworthy versus a company's website or a press release, which is it's not news that's curated in the same way. It is a biased person telling you what they want you to hear about a particular company. It wouldn't fall under the ordinary meaning of the term news media, as it seems to be understood. Isn't the point of this, the public disclosure bar in the statute, to sort of distinguish between people who are bringing some inside information to the table and revealing something that otherwise might not have been revealed versus people who are just sort of piggybacking on, you know, other people's revelation of facts into the world? And when we think of it in those terms, I mean, like, just reading a press release, you're not actually contributing anything to the government's understanding of what's happened, are you? I don't think that's quite correct, Your Honor. There is no requirement that a relator have insider information, and in fact, the public disclosure bar has those three specifically enumerated channels that are written that way for a reason. The first two involve federal hearings and federal reports, and in fact, it was amended to just include only federal and not state such reports. This shows that Congress had a limit that they intended on the public disclosure bar, and in fact, as the Integra court put it, that was, the public disclosure bar is intended to block cases where the government is likely already aware of the false allegations. Now here, where we have to go through, you know, what they're calling press releases, which I would submit doesn't even reveal the actual ineligibility, the central issue here, the company's website and various other sources, that does not trigger those same sort of concerns and in fact, would not fall under, I'd submit, the purpose of the public disclosure bar. But the purpose, I mean, if I understand you right, I mean, like, the purpose is the government is already aware of what's written in the news media, right, because they can read, they read the newspaper, but they aren't aware of what's in press releases? No, Your Honor, because the press releases do not typically fall under what's determined to be news media. And more importantly, I don't think there's been a showing that any of the press releases here show Calcons ineligibility. The fact that they, and in fact, that was- Could you speak to this argument that jumbo loans are not inconsistent with the exceptions? Correct, because these, it's not just jumbo loans, it's the construction loans, these nonstandard loan types are going to be more difficult for a company to flip within 14 days, because what this exception really is about is companies that originate and flip loans. And so, these would be standard things that like a Freddie Mac or a Fannie Mae would sort of purchase in bulk. But beyond just those unstandard loan types that make it unlikely that they could actually fall under this exception, you know, drawing reasonable inferences, there's also, you know, the fact that a relator has alleged that they actually hold loans in portfolio and that would be disqualifying under those exceptions. But did you, I mean, I'm not sure that's very clearly explained. That's maybe being generous in the complaint. Is there, could you maybe sketch out for us what more you might be able to say if you were granted leave to amend? We would flesh out the inferences that are drawn and explicitly why those inferences are, may lead to a reasonable conclusion that they do not qualify for any of the noted exceptions, which the two biggest ones would be companies that merely service loans held by others or ones that initially originate and then immediately flip those loans within 14 days. And there's an allegation in here already, you say, that they hold them? Yes, in paragraphs 14 and 15, in the end of paragraph 14, there's an allegation that there was a direct lender that held its loans in portfolio to collect interest. And then in paragraph 15, it goes on to explain why even if CALCON's business involves servicing loans, it also acts as a lender, a traditional lender. And therefore, it would be ineligible to qualify under the PPP. Did you ask for leave to amend? Yes, we did. And that was denied. And is there anything more you would say about Siender? Because what I'm wondering about is the use of the code 522292 in the application would seem to be a, if the company was intending to somehow hide the fact that they didn't qualify for this loan, using that code in the application would seem to be a dead giveaway. So what's, doesn't that cut against the finding of Siender? I think, Your Honor, in the absence of other facts, that might be correct. But here with the express certifications that were made and the very public announcement that lenders were entitled to rely on these certifications and the fact that there were exceptions that they knew they could at least argue to qualify under, I think that that undercuts the conclusion that they did not have Siender. In other words, I think the reasonable inference in the totality of the circumstances is that Siender was more than adequately applied under the correct standard. I think you didn't ask us for leave to amend. Am I right? Your Honor, I would have to, I believe that was one of the issues presented. I would have to double check if I may have one moment here. Did the district court err? Yes. I don't remember an argument about that, but okay. Because I don't think you told us what you would do to fix it, did you? We would further expand on not only the facts alleged in paragraphs 14 and 15, but then better explain why that would disqualify CALCON. And as a final point, I would like to point out that the conclusion that Relator came to that CALCON is not eligible can be made entirely from sources that are not the NASCS code, which further reveals that the NASCS code is itself ambiguous and cannot have revealed the fraud. Thank you. Thank you, Your Honor. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, MILLER, Scarsi